**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JOSEPH SCIASCIA, AL DOOLEY, FRED
EISGRUB, and FRED JORDAN, as Trustees of
the SPECIAL and SUPERIOR OFFICERS
BENEVOLENT ASSOCIATION DEFINED
CONTRIBUTION FUND,

                Plaintiffs,

      -against-

ROCHDALE VILLAGE, INC.,

               Defendant.
-------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
09-CV-4237 (ADS)(ARL)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★    MAR 3 0 2012    ★

LONG ISLAND OFFICE

**APPEARANCES:**

**Archer, Byington, Glennon & Levine LLP**
*Attorneys for the Plaintiffs*
One Huntington Quadrangle, Suite 4C10
Melville, NY 11747
      By:    John H. Byington, III, Esq.
              Paula A. Clarity, Esq., Of Counsel

**Clifton Budd & DeMaria, LLP**
*Attorneys for the Defendant*
420 Lexington Avenue
New York, NY 10170
      By:    Arthur J. Robb, Esq., Of Counsel

**SPATT, District Judge.**

On October 1, 2009, the Plaintiffs Joseph Sciascia, Al Dooley, Fred Eisgrub, and Fred

Jordan, as Trustees of the Special and Superior Officers Benevolent Association Defined

Contribution Fund ("SSOBA Fund" or "the Plaintiffs"), commenced this action against the

Defendant Rochdale Village, Inc. ("Rochdale" or "the Defendant").  The complaint asserts

causes of action under Section 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185, and Sections 515 and 502(a)(3) of the Employee Retirement Income Security Act

established the hours, benefits, wages, and other terms and conditions of employment of the Public Safety Department's officers.

Beginning in 1986, Rochdale has made annual contributions on behalf of eligible Rochdale employees, including its SSOBA employees, to the Rochdale Money Purchase Pension Plan ("the Rochdale Plan"). Rochdale's contributions to the Rochdale Plan equal five percent of each eligible Rochdale employee's annual W-2 compensation. Unlike employee deferrals to a 401(k) plan, the Rochdale's annual contributions to the Rochdale Plan are in addition to participant wages.

**B. The 2005 CBA**

In 2005, Rochdale and SSOBA entered into a collective bargaining agreement ("CBA") that would govern the 2005 through 2008 time period ("the 2005 CBA"). (See Ex. F to the Defendant's Summary Judgment Motion ("Def.'s Motion").) Unlike the parties' previous collective bargaining agreements, the 2005 CBA contemplated the existence of a retirement fund for SSOBA employees separate and apart from the Rochdale Plan. In particular, the 2005 CBA expressly stated that "[t]he Union is in the process of creating a retirement fund; we agree to a re-opener on April 1, 2006." (2005 CBA at 13.) During the 2005 through 2006 year, both eligible SSOBA members and Rochdale's non-union employees participated in the Rochdale Plan under the same terms and conditions.

On September 25, 2006, Rochdale and SSOBA were parties to a memorandum of agreement, modifying the 2005 CBA that deferred, among other things, the retirement fund reopener until April 1, 2007. (Def.'s Motion, Ex. H.) On August 20, 2007, the parties entered into a letter agreement that, among other things, stated that the Union would "take over" the

3

pension plan on September 1, 2007. (Def.'s Motion, Ex. I.) The April 1, 2007 and August 20, 2007 letter agreements are referred to by the parties as the "side letters".

## C. The Creation of the SSOBA Fund

In 2006, SSOBA Fund was established pursuant to collective bargaining agreements between SSOBA and various employers whose employees were represented by SSOBA. Pursuant to ERISA, 29 U.S.C. §§ 1002(2)(A), 1002(34), and 1002(37), the SSOBA Fund is a multiemployer, defined contribution pension plan, which was created as a joint labor-management, Taft-Hartley trust fund with an equal number of union and employer representatives. The SSOBA Fund was established and is maintained pursuant to an Agreement and Declaration of Trust ("Trust Agreement), which governs the operation of the SSOBA Fund. (See Ex. A to the Affidavit of Joseph Sciascia in Support of the Plaintiffs' Motion for Summary Judgment ("Sciascia Aff.").) The named Trustees who executed this Trust Agreement were John Hernandez of St. Vincent's Midtown Hospital and Elizabeth Goldsmith of Rochdale, both acting as employer representative Trustees, and Joseph Sciascia and Natalie Rodriguez, both acting as Union representative Trustees.

The SSOBA Fund purports to provide for retirement benefits and deferred income for eligible employees and their beneficiaries pursuant to a written plan of benefits entitled the "SSOBA Defined Contribution Retirement Plan" ("SSOBA Plan" or "SSOBA Fund/Plan"). The initial SSOBA Plan was signed on January 1, 2006, and was adopted by the Trustees on November 1, 2006. The SSOBA Plan currently in effect was restated on January 1, 2009. Although the parties disagree about the propriety of the decision, there is no dispute that the Internal Revenue Service ("IRS") has issued letter determinations that both the initial and current

versions of the SSOBA Plan are tax-qualified profit sharing plans under Internal Revenue Code § 401(a).

Pursuant to the SSOBA Plan, employers contribute payments to the SSOBA Fund and the SSOBA Fund, in turn, provides retirement benefits to those employees and their beneficiaries through individual, defined contribution retirement accounts in accordance with the benefits provided through negotiations in collective bargaining. (Pls.' Rule 56.1 Stmt., ¶ 6.) The parties dispute the type of benefits that the SSOBA Fund provides. According to Rochdale, the SSOBA Plan provides its participants with 401(k) benefits, but does not provide its participants with the type of tax-qualified money purchase pension plan benefits afforded by the Rochdale Plan. Rochdale contends that the SSOBA Plan does not include any provision for individual participant accounts to accept employer contributions.

Although the Plaintiffs admit that the SSOBA Plan does permit certain employees to have 401(k) elective deferrals, the Plaintiffs contend that this option is only available to employees if it is included in their collective bargaining agreement with their respective employer. (Sciascia Aff., ¶ 20.) By contrast, employers who do not have a 401(k) wage deferral election provided in their collective bargaining agreement contribute a straight percentage of each employee's wages over and above the employees' wages into their employees' qualified retirement accounts. (Sciascia Aff., ¶ 20–21.) According to the Plaintiffs, the SSOBA Fund has maintained individual, defined contribution retirement accounts for between 140–200 employees from between six to ten participating employers since 2008. (Sciascia Aff., ¶ 19.)

5

## D. The March 17, 2008 Memorandum of Agreement and the 2008 CBA

On March 17, 2008, the parties entered another memorandum of agreement (the "MOA")

amending the 2005 CBA, which stated in pertinent part that:

> It is hereby agreed, effective January 1, 2008, on an annual basis, [Rochdale] agrees to contribute the sum of 5.00% of gross payroll on behalf of each [SSOBA Employee] to the SPECIAL AND SUPERIOR OFFICERS BENEVOLENT ASSOCIATION DEFINED CONTRIBUTION RETIREMENT PLAN ("Fund"), a jointly-administered trust fund subject to applicable law, whose purpose is to provide eligible participants with defined contribution pension benefits. . . .
>
> The parties agree to prepare and execute those documents necessary to effect transfer of assets from the [Rochdale Plan] to the Fund. [Rochdale] acknowledges and agrees that it will immediately transfer all assets held on behalf of [SSOBA Employees], including contributions to and owing, for the period on or before December 31, 2007. [Rochdale] agrees to fully cooperate in providing any documents required by the Fund in connection with this transaction.

(See Sciascia Aff., Ex. D.)  The signatories to the MOA were Joseph Sciascia on behalf of the

Union, and Elizabeth Goldsmith, Director of Human Resources for Rochdale.

Subsequently, on October 29, 2008, Rochdale and SSOBA entered into a collective

bargaining agreement effective from April 1, 2008 through March 31, 2011 (the "2008 CBA").

(See Sciascia Aff., Ex. E.)  Article XXIII of the 2008 CBA titled "Retirement Fund" stated "See

the attached Memorandum of Agreement dated March 17, 2008".  (2008 CBA, Article XXIII.)

The main dispute between the parties centers on the MOA, and whether it imposed a

clear and unequivocal obligation on Rochdale to contribute to the SSOBA Fund, or imposed an

unsatisfied condition precedent excusing Rochdale's payment obligations.  Based on its

interpretation of the MOA and the 2008 CBA as preliminary steps toward creating a fund that

provided the same money purchase pension plan benefits as the Rochdale Plan, Rochdale did not

contribute to the SSOBA Fund for its SSOBA Employees for the years of 2008, 2009, and 2010.

Rather, Rochdale continued to make contributions on behalf of its SSOBA employees to the

6

Rochdale Plan. In this action, the SSOBA Trustees seek to recover the unpaid contributions for 2008, 2009, and 2010 that they contend Rochdale owes to the SSOBA Fund pursuant to the terms of the MOA and the 2008 CBA.

**E.   The Instant Motions**

On May 13, 2011, the parties filed cross-motions for summary judgment.

**1. The Plaintiffs' Motion**

Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plans or such agreement." 29 U.S.C. § 1145. In order to establish liability under Section 515, the Plaintiff must show "that the employer promised to contribute to the plan in order to succeed on its claim". Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313 (2d Cir. 1990). Thus, the Plaintiffs may only succeed on their motion for summary judgment under Section 515 if they show "that the agreement creates an unambiguous contractual obligation on the [Defendant] to make contributions pursuant to the contended provisions." Trustees of the Bricklayers & Allied Craftworkers v. Charles T. Driscoll Masonry Restoration Co., 165 F. Supp. 2d 502, 510 (S.D.N.Y. 2001).

The Plaintiffs contend that they are entitled to summary judgment because the clear and unequivocal language of the parties' agreements required the Defendant to make annual contributions to the SSOBA Fund on behalf of its employees. By failing to make these payments for the 2008, 2009, and 2010 calendar years, the Plaintiffs contend that the Defendant violated

7

Section 515 of ERISA and the Plaintiffs are entitled to damages in the form of unpaid contributions, interest and liquidated damages, and attorneys' fees and costs.

### 2. The Defendant's Motion

In interpreting Section 515, the Second Circuit has explained that "Congress intended to limit the defenses available to an employer when sued by an employee benefit plan . . . [because] under ERISA § 515, multiemployer pension funds, although third-party beneficiaries of collective bargaining agreements between employers and unions, are nevertheless 'in a position superior to the original promisee [the union], analogous to a holder in due course.'" DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 653 (2d Cir. 1994) (quoting Benson, 907 F.2d at 314.) "[O]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." Benson, 907 F.2d at 314.

Thus, as summarized by the Second Circuit in DeVito, the only defenses recognized by courts to claims against employers for unpaid benefit contributions are: (1) the contributions demanded are not "in accordance with the terms and conditions" of the CBA and therefore constitute "nonexistent contractual obligations"; (2) the pension contributions themselves are illegal; or (3) the relevant collective bargaining agreement is void (not merely voidable). 38 F.3d at 653. (citation omitted); see also Carpenters Fringe Benefit Funds of Illinois v. McKenzie Engineering, 217 F.3d 578, 582 (8th Cir. 2000) ("Under ERISA § 515, the Funds may collect only those contributions that [the employer] is contractually obligated to pay.") (citing DeVito, 38 F.3d at 653); Gesualdi v. Laws Const. Corp., 759 F. Supp. 2d 432, 440 (S.D.N.Y. 2010).

Here, the Defendant seeks summary judgment on the grounds that: (1) this action is duplicative of a second-filed class action between the Union and Rochdale, the Rochdale Plan,

and Darius George, the Rochdale Plan Trustee; (2) even if it did agree to make the contributions, the contributions are barred because the SSOBA Fund violates Section 302 of the LMRA and therefore any contributions would be illegal; and (3) it does not owe any delinquent contributions because of an unsatisfied condition precedent to its obligation.

## II. DISCUSSION

### A. Legal Standard for Summary Judgment

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)). On cross-motions for summary judgment, the court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party. Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).

9

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

**B. Whether this Action is Duplicative and Should be Dismissed or Stayed**

As an initial matter, the Defendant contends that the Court should dismiss or stay this action in light of a purportedly duplicative action entitled Special and Superior Officers Benevolent Association by Joseph Sciascia, as President and William Jaudon, Edwin Rollock and Wrichley Nelson, on behalf of themselves and as Class Representatives of a class of similarly situated individuals v. Rochdale Village, Inc., Rochdale Village Inc. Money Purchase Pension Plan, and Darius George, individually and as Trustee, No. 11 Civ. 1580 (Seybert, J.) (the "Union Action"). The Union Action was commenced by the SSOBA Union, as opposed to the SSOBA Trustees, against the Defendant, the Rochdale Plan, and Darius George seeking costs, disbursements, reasonable attorney's fees, and an order compelling the defendants to immediately put into effect a transfer of all SSOBA Employees' assets held by the Rochdale Plan to the SSOBA Plan; enjoining the Rochdale Plan and the Trustee from allowing any additional forfeiture of accrued benefits; and compelling the Rochdale Plan and the Trustee to repay and restore any forfeited benefits.

10

The general rule among federal district courts is to avoid duplicative litigation. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). As the Second Circuit stated, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000). Thus, when a party files a suit related to a previously-pending suit, the Court applies the "prior pending action doctrine" to determine whether the subsequent action should remain pending, be stayed, or be dismissed. Id. Like the closely-related doctrines of claim and issue preclusion, the prior pending action doctrine generally prohibits parties from litigating claims or issues more than once. Id. Pursuant to this doctrine, a Court will usually stay or dismiss a subsequent suit that duplicates a claim or claims already pending before another court. See, e.g., First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d 76, 79–80 (2d Cir. 1989).

The Court need not reach the issue of whether these actions are sufficiently duplicative under the relevant standards to warrant dismissal or a stay. The Plaintiffs commenced the instant action on October 1, 2009. The plaintiffs in the Union Action filed their complaint more than a year later on March 31, 2011. Thus, there is no question that the case presently before the Court is the first-filed suit, and therefore any application for dismissal or stay based on the purportedly duplicative nature of certain claims in the two cases should be raised and decided in the second filed action. As a result, the Defendant's motion for summary judgment dismissing this action on the ground that it is duplicative of the Union Action is denied.

**C.  Whether Contributions to the SSOBA Fund Would be Illegal**

The Defendant contends that, even assuming it did agree to contribute to the SSOBA Fund, it is entitled to summary judgment dismissing the Plaintiffs' claims because such

11

contributions would be illegal. As previously stated, illegality is a defense to a Section 515 cause of action. According to the Defendant, any contributions to the SSOBA Fund would be illegal because the SSOBA Fund does not provide benefits to its employees and therefore violates Section 302 of the LMRA, 29 U.S.C. § 186(a). In particular, the Defendant argues that the SSOBA Plan/Fund contains certain structural defects preventing it from providing its employees with tax-qualified benefits, including: (1) it does not have any provisions to take into account any Rochdale contributions made on behalf of its SSOBA employees and (2) even if it did have such provisions, the SSOBA Plan/Fund fails to include provisions for the allocation of the Rochdale contributions to the accounts of the SSOBA employees of Rochdale. For the purposes of this discussion, the Court presumes that the MOA and 2008 CBA impose a clear and unequivocal obligation on the Defendant to contribute to the SSOBA Fund.

"Section 302(a) of the LMRA makes it unlawful as a general matter for employers to provide payments to union affiliated representatives and entities, including union established ERISA funds, beyond narrowly prescribed exceptions." Trustees of the Nat'l Automatic Sprinkler Industry Pension Fund v. Fairfield County Sprinkler Co., Inc., 243 F.3d 112, 116 (2d Cir. 2001) (citing 29 U.S.C. §§ 186(a) & 186(c)); see also Mazzei v. Rock-N-Around Trucking, Inc., 246 F.3d 956, 960 (7th Cir. 2001) (holding that, if an employer contribution is illegal under Section 302 of the LMRA, the contribution is "inconsistent with law" and may not be enforced under ERISA Section 515). Accordingly, the Plaintiffs are precluded from recovering the allegedly delinquent contributions by Section 302(a), unless one of the statutory exceptions applies. Fairfield County Sprinkler Co., 243 F.3d at 116–17.

Here, the Plaintiffs contend that the SSOBA Fund satisfies the exception set forth in Section 305(c)(5), which creates an exception where the payments are made to ERISA trust

12

funds established "for the sole and exclusive benefit of the employees of such employer, and

their families and dependents (or of such employees . . . jointly with the employees of other

employers making similar payments, and their families and dependents)". 29 U.S.C. § 186(c);

see Fairfield County Sprinkler Co., 243 F.3d at 116; Nat'l Leadburners Health & Welfare Fund

v. O.G. Kelley & Co., Inc., 129 F.3d 372, 374 (6th Cir. 1997) ("One exception allows an

employer to make contributions to a trust fund established for the benefit of employees if the

obligation to contribute is specified in a written agreement."). As the Second Circuit stated in

Fairfield County Sprinkler Co.:

> Section 302(c)(5) operates to permit employer payments to union trust funds,
> excepting them from the prohibition of § 302(a), if, among other conditions:
>
> 1. "the detailed basis on which such payments are to be made is specified in a
> written agreement with the employer;" 29 U.S.C. § 186(c)(5)(B), and
>
> 2. "such payments are held in trust for the purpose of paying ... for the benefit of
> [the] employees, their families and dependents, for medical or hospital care,
> pensions on retirement or death of employees, compensation for injuries or
> illness resulting from occupational activity or insurance to provide any of the
> foregoing, or unemployment benefits or life insurance, disability and sickness
> insurance, or accident insurance[.]" 29 U.S.C. § 186(c)(5)(A).

243 F.3d at 117.

The SSOBA Fund/Plan satisfies both of these conditions. First, there is a "written

agreement with the employer" that specifies "the detailed basis on which such payments are to

be made". "The purpose of the 'written agreement' requirement is to ensure that employer

contributions are for a proper purpose and that benefits from the fund reach only the proper

parties." Nat'l Leadburners Health & Welfare Fund, 129 F.3d at 375 (citing Moglia v.

Geoghegan, 403 F.2d 110, 116 (2d Cir. 1968)). The 2008 CBA explicitly incorporates the 2008

MOA, which sets forth the detailed basis for the employers' contribution obligations. In

particular, the MOA clearly states that the Defendant "agrees to contribute the sum of 5.00% of

13

gross payroll on behalf of [its SSOBA employees] to the [SSOBA Fund], a jointly-administered trust fund subject to applicable law, whose purpose is to provide eligible participants with defined contribution pension benefits." (MOA at 1.) See Brown v. C. Volante Corp., 194 F.3d 351, 353, 355 (2d Cir. 1999) (holding that an unsigned CBA where the "employers agree to contribute a fixed dollar amount to the Fund contingent upon the number of hours its employees work" satisfied the written agreement prong of Section 302(c)(5)(B)).

Second, the Trust Agreement satisfies the second condition, that the purpose of the fund is to provide for the "sole and exclusive benefit of the employees". The Trust Agreement clearly sets forth that the purpose of the SSOBA Fund is to "provid[e] annuity and retirement benefits for participants and their beneficiaries, as is more fully set forth in the "'Special and Superior Officers Benevolent Association Defined Contribution Retirement Fund' plan document" and that the Trustees "shall use and apply the Fund . . . [t]o pay or provide for the payment of annuity and retirement benefits, as the Trustees may determine, on behalf of any Employees of contributing Employers and where applicable, their spouses or beneficiaries, subject to [certain enumerated] conditions . . . ." (Trust Agreement at 1, 5; see also SSOBA Plan stating that it was established "for the purposes of providing appropriate benefits to the workers employed by such Employers within the bargaining unit represented by the Union".) The Defendant does not dispute that the purpose of the SSOBA Plan is to provide benefits for the "sole and exclusive benefit of the employees", but rather that in practice its employees will not receive any benefits due to structural defects in the SSOBA Plan.

The United States Supreme Court in In Local 144 Nursing Home Pension Fund v. Demisay, 508 U.S. 581, 113 S. Ct. 2252, 124 L. Ed. 2d 522 (1993) explained the authority of courts when a plan allegedly violates Section 302 of the LMRA, as follows:

14

> By its unmistakable language, § 302(e) provides district courts with jurisdiction "to restrain violations of this section." A "violation" of § 302 occurs when the substantive restrictions in §§ 302(a) and (b) are disobeyed, which happens, not when funds are administered by the trust fund, but when they are "pa[id], len[t], or deliver[ed]" to the trust fund, § 302(a), or when they are "receive[d], or accept[ed]" by the trust fund, or "request[ed], [or] demand[ed]" for the trust fund, § 302(b)(1). And the exception to violation set forth in paragraph (c)(5) relates, not to the purpose for which the trust fund is in fact used (an unrestricted fund that happens to be used "for the sole and exclusive benefit of the employees" does not qualify); but rather to the purpose for which the trust fund is "established," § 302(c)(5), and for which the payments are "held in trust," § 302(c)(5)(A). The trustees' failure to *comply* with these latter purposes may be a breach of their contractual or fiduciary obligations and may subject them to suit for such breach; but it is no violation of § 302.

Id. at 587–89, 113 S. Ct. 2252 (emphasis in original). Subsequently, the Second Circuit held in

DeVito that Demisay "forecloses an argument that payments to a benefit fund would be in

violation of the law because of the way in which the fund was operated." Del Turco v.

Speedwell Design, 623 F. Supp. 2d 319, 345 (E.D.N.Y. 2009) (citing DeVito, 38 F.3d at 653 n.

3).

However, at least one court has held that a structural defect in a clause in the original

establishing document of the pension plan can violate Section 302 if its inclusion prevented the

plan from being for the sole and exclusive benefit of employees. Lipton v. Consumers Union of

U.S., Inc., 37 F. Supp. 2d 241, 246 (S.D.N.Y. 1999). Thus "[t]he question remains whether that

circumstance requires the conclusion that the pension plan was not established for the sole and

exclusive benefit of employees within the meaning of the LMRA". Id. at 246–47.

The Defendant cites to a number of purported structural defects based on the language of

the SSOBA Plan/Fund that it contends reflects that the employer contributions are not placed

into individual employee accounts for the benefit of employees. Therefore, the Defendant

contends that the SSOBA Plan only provides participants with 401(k) benefits and not the type

of tax-qualified money purchase pension plan benefits available under the Rochdale Plan. As an

15

initial matter, the Court notes that, regardless of whether the parties agreement was contingent on the SSOBA Fund providing the same money purchase pension plan benefits as the Rochdale Plan, the similarities between the two plans have no bearing on the legality of the SSOBA Plan.

Furthermore, the Defendant does not put forth any evidence beyond its own unsubstantiated assertions to support its contention that the SSOBA Plan does not allocate employer contributions into individual accounts. Nor does the Defendant offer any evidence to show that, despite its stated purpose, the true purpose of the SSOBA Plan is for something other than the provision of benefits to participating employees.

By contrast, the plain language of the SSOBA Plan makes numerous references to the existence of participant accounts for non-401(k) employer contributions. First, the Definitions section of the SSOBA Plan includes the following:

> "Agreement" means the collective bargaining agreement between the Union and the Employers dated as of January 1, 2006 that required Participating Employers to contribute to the Plan, if the terms and conditions of the Plan's requirements for contributions are satisfied and any subsequent collective bargaining agreements providing contributions to the Plan" (SSOBA Plan§ 1.2)

> "Contribution Account" shall mean the separate account maintained for each Participant pursuant to Section 4.1, as adjusted in accordance with the provisions of Section 7 of the Plan (SSOBA Plan, § 1.8).

(SSOBA Plan at 1, 5.) Section 4.1 of the SSOBA Plan further provides that "The Employer shall contribute for each eligible Employee such amount as is provided in the applicable Agreement and shall be considered Employer Deferrals". (Id. at 9.) Here, the applicable "Agreement" is the 2008 CBA, and in turn the MOA, which set forth the amount to be contributed by Rochdale. Furthermore, Section 7 of the SSOBA Plan is titled "Participants Accounts", and Section 7.1 expressly states, "[t]here shall be maintained for each Participant a separate account, referred to as his Participant Account, reflecting the amounts allocated to such Participant pursuant to Section Four and this Section Seven." (Id. at 15.)

16

As explained by Joseph Sciascia, President of SSOBA and a SSOBA Plan Trustee, among whose obligations is the interpretation of the provisions and terms of the SSOBA Plan pursuant to the Trust Agreement, (See Trust Agreement, Article VII):

> The SSOBA Fund has maintained individual, defined contribution retirement accounts for between approximately 140-200 employees since 2008 . . . . The number of participating employers over that period of time has been between six to ten who contribute to the SSOBA Fund. The retirement accounts for employees are funded through contributions by their employers, as provided under the employers' Collective Bargaining Agreements with the Union.
>
> . . . .
>
> The employers who do not have a 401(k) wage deferral election provided in their Collective Bargaining Agreement contribute a straight percentage of each employee's wages, the same as provided in the MOA for Rochdale, which are payments by the contributing employers into their employees' qualified retirement accounts, over and above the employees' wages.

(Sciascia Aff., ¶¶ 19, 21.)

Furthermore, the Plaintiffs submitted the Affidavit of Ronald A. Fedrizzi, the Administrator of the SSOBA Fund and Vice President of the SSOBA Union, which attests to the following facts about the SSOBA Fund:

> There are currently 157 individual participant retirement accounts maintained by the SSOBA Fund. Of those 157 retirement accounts, there are 147 accounts which have been funded exclusively through employer contributions paid by employers over and above the employees' wages, and are not 401(k) employee wage deferrals.
>
> Of the 157 current participant retirement accounts, six are funded exclusively through 401(k) employee wage referrals as elected by the given employees, and which are pre tax wage deferrals paid over to the Fund through payroll deductions by the employees' employers. The remaining four individual participant retirement accounts have been funded through both employer contributions and by 401(k) employee wage deferrals.

(Fedrizzi Aff., ¶¶ 2, 3.) Accordingly, even assuming that the Defendant could argue that structural defects rendered the SSOBA Plan in violation of the Section 302(a) when administered, it has failed to set forth any evidence sufficient to create a genuine issue of

17

material fact that the SSOBA Plan documents indicate that, despite its stated purpose, the plan is not created for the sole and exclusive benefit of its employees.

To the extent that the Trustees are violating their obligation to administer the fund for the sole and exclusive benefit of the employees, it is up "to state law to determine when breaches of that trust have occurred and how they may be remedied." Demisay, 508 U.S. at 590, 113 S. Ct. 2252. Thus, the Defendant's motion for summary judgment to dismiss the Plaintiffs' Section 515 claim on the basis of illegality is denied.

## D. Whether Rochdale Has a Contribution Obligation

In order to prevail on its motion for summary judgment, the Plaintiffs must show that the CBA unambiguously imposes a clear and unequivocal obligation on the Defendant to make the relevant contributions to the SSOBA Fund. The Court having determined that the contribution obligations to the SSOBA Fund are not illegal, in order for Defendant to prevail, the Defendant must show that the CBA unambiguously imposes an unsatisfied condition precedent with regard to its contribution obligations.

The Plaintiffs allege that they are entitled to summary judgment because the MOA entered into between Rochdale and SSOBA on March 18, 2008 expressly provided that Rochdale was to contribute to the SSOBA Fund 5% of the gross pay of each of its SSOBA employees annually, and that the 5% annual contributions for each year were to be paid by Rochdale to the SSOBA Fund by February 1 of the following year. The Plaintiffs assert that the MOA was incorporated without change into Rochdale's subsequent full written CBA under Article XXIII, entitled "Retirement Fund", with the term April 1, 2008 through March 31, 2011, and thus this obligation is in clear and unambiguous terms.

18

On the other hand, the Defendant argues that, because the MOA was an amendment to the 2005 CBA, the parties' intention must be derived from reading the 2005 CBA, the relevant side letters, the MOA, and the 2008 CBA together.  Viewed in its entirety, the Defendant contends that there was an unambiguous condition precedent that required certain documents to be executed before it was required to contribute to the SSOBA Fund.  Specifically, the Defendant contends that the MOA was actually a memorandum of understanding, and that it did not agree to contribute to the SSOBA Fund until the following documents necessary to complete the transaction were finalized:  (1) an amendment to the Plan Documents of the SSOBA Plan/Fund; (2) an asset transfer agreement between the Rochdale and the SSOBA Plan/Fund; (3) an amendment to the MOA; and (4) an indemnification agreement.  (Def.'s Rule 56.1 Stmt., ¶ 17.)

Thus, here, the central dispute is whether there is a clear and unequivocal obligation on the part of the Defendant to pay the SSOBA Fund the relevant contribution payments, or if such payments are excused by an unsatisfied condition precedent.  The resolution of this issue requires the Court to interpret the contractual agreements between the parties, including the 2005 CBA and the relevant side letters, the MOA, and the 2008 CBA.

The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement. Compagnie Financiere De Cic Et De L'UNION Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 157 (2d Cir. 2000) (citing Sayers v. Rochester Te. Corp. Supplemental Mgmt. Plan, 7 F.3d 1091, 1094 (2d Cir. 1993)).  When a court interprets a CBA, the traditional rules of contract interpretation apply, provided they are consistent with fair labor policies.  See Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 576 (2d Cir. 2000); Demolition Workers Union v.

Mackroyce Contracting Corp., No. 97-CV-4094, 2000 WL 297244, at *34 (S.D.N.Y. March 22, 2000) (applying general contract law principles to evaluate the employer's obligations to the Funds under the terms and conditions of the CBA).   Summary judgment is appropriate in a contract interpretation dispute "when the language of the contract provision is wholly unambiguous" or "when the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." Nycal Corp. v. Inoco PLC, 988 F. Supp. 296, 298–99 (S.D.N.Y. 1997) (citing Mellon Bank, N.A. v. United Bank Corp. of New York, 31 F.3d 113, 115–16 (2d Cir. 1994)); see Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996).

"Whether ERISA plan language is ambiguous is a question of law that is resolved by reference to the contract alone." Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan, 497 F.3d 234, 244 n. 6 (2d Cir. 2007) (internal quotation marks and citation omitted).  "The existence of ambiguity is determined by examining the 'entire contract and consider[ing] the relation of the parties and the circumstances under which it was executed,' with the wording to be considered 'in the light of the obligation as a whole and the intention of the parties as manifested thereby'". Goldman Sachs Group, Inc. v. Almah LLC, 85 A.D.3d 424, 426–27, 924 N.Y.S.2d 87, 90 (1st Dep't 2011) (quoting Kass v. Kass, 91 N.Y.2d 554, 566, 673 N.Y.S. 2d 350, 696 N.E.2d 174 (1998)) (alteration in original).  In this regard, however, the writing between the parties is the best evidence of what the parties agreed upon and a "unilateral expression of one party's post-contractual subjective understanding of the terms of the agreement . . . [is] not probative as an aid to the interpretation of the contract." Invista B.V. v. E.I. Du Pont De Nemours & Co., No. 07-CV-713, 2008 WL 4865044 at *4 (S.D.N.Y. Nov. 5, 2008) (quoting Murray Walter, Inc. v.

Sarkisian Bros., Inc., 183 A.D.2d 140, 146, 589 N.Y.S.2d 613, 616 (3d Dep't 1992)). "Only

when provisions are ambiguous may courts look to extrinsic factors—such as bargaining history,

past practices, and other provisions in the CBA—to interpret the language in question."

Aeronautical Indus., 230 F.3d at 576.

      The Defendant contends that, viewed as a whole, the 2005 CBA, side letters, and MOA

unambiguously show that the contribution obligation in the MOA was contingent on SSOBA

satisfying a condition precedent, namely the creation of plan that would be capable of providing

the same tax-qualified benefits to its employees as the Rochdale Plan.  To start with, the

Plaintiffs dispute whether the Court should even consider the 2005 CBA and relevant side letters

in its analysis.  Regardless, the Plaintiffs point out that nowhere in the MOA or any other

document is there a condition expressed that the Defendant's obligation to contribute to the

SSOBA Fund would be contingent on the SSOBA Plan being "a money purchase pension plan

equivalent to the Rochdale Plan".  Rather, the Plaintiffs contend that, even considering all of the

documents, it is clear that the purpose of Rochdale's contributions was merely to provide eligible

participants with defined contribution benefits.  (See Pls.' Opp. at 14–15).  The Court agrees.

      "A condition precedent is an act or event, other than a lapse of time, which, unless the

condition is excused, must occur before a duty to perform a promise in the agreement arises."

Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690, 636 N.YS.2d 734,

737, 660 N.E.2d 415, 418 (1995) (internal quotation marks omitted); accord MHR Capital

Partners LP v. Presstek, Inc., 12 N.Y.3d 640, 645, 884 N.Y.S.2d 211, 215, 912 N.E.2d 43, 47

(2009).  As the Second Circuit noted in Ginett v. Computer Task Group, Inc., 962 F.2d 1085 (2d

Cir. 1992), "[c]onditions are not favored under New York law, and in the absence of

unambiguous language, a condition will not be read into the agreement."  Id. at 1099–1100; see

also DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 654 (2d Cir. 1994) (noting that "the law of contracts disfavors conditions if there is doubt as to the meaning of contractual language"); Novick v. Metro. Life Ins. Co., 764 F. Supp. 2d 653 (S.D.N.Y. 2011) (quoting Bulgartabac Holding AD v. Republic of Iraq, No. 08-CV-6502, 2010 WL 3633501, at *2 (S.D.N.Y. Sept. 20, 2010) for the proposition that, in New York, "there exists a 'considerable body of law' finding that 'conditions precedent are not favored.'").

On the date it was signed, the 2005 CBA stated under the heading "Retirement Fund" that, "The Union is in the process of creating a retirement fund; we agree to a re-opener on April 1, 2006". (2005 CBA, Article XXIII.) Notably, this provision states that SSOBA was creating "a retirement fund", not a "money purchase pension plan". On September 25, 2006, the parties entered into a Memorandum of Agreement modifying the 2005 CBA to defer the re-opener of the Retirement Fund to April 1, 2007. (Def.'s Ex. H.) In a letter dated August 20, 2007, the parties agreed that, among other things "[the] Union [was] to take over the pension plan on September 1, 2007". (Def.'s Ex. I.) Again, the clear language says that the Union is to take over "the pension plan", without any reference to the specific type of plan or the requirements of that plan. Regardless of what may have been discussed by the parties during negotiations, the plain language of the 2005 CBA and the side letters modifying its terms cannot be read to impose any requirements on the anticipated Union Fund, let alone a condition precedent that the Union Fund replicate the Rochdale Plan. The first and only mention of a specific union retirement fund is made in the MOA, again without reference to a "money purchase pension plan" or any other specific requirements.

Having found that nothing in the 2005 CBA or side letters supports the existence of specific requirements for the SSOBA Plan or conditions precedent to the Defendant's

contribution to the SSOBA Fund, the Court turns to the language of the MOA and the 2008 CBA. As an initial matter, the Defendant argues that the MOA cannot be read as imposing an obligation on it to contribute to the SSOBA Fund because the MOA states that the Defendant agrees to make payments to the "Special and Superior Officers Benevolent Association Defined Contribution Retirement Plan" as opposed to the "SSOBA Defined Contribution Retirement Plan". (MOA at 1.)  The Court finds this argument to be without merit.

In the Court's view, although the initial reference to the SSOBA Fund uses the full name of the Union, rather than the abbreviated form, it does not render the MOA ambiguous as it is not "reasonably susceptible to more than one reading." U.S. Fire Ins. Co. v. Gen. Reinsurance Corp., 949 F.2d 569, 572 (2d Cir. 1991).  In fact, although the SSOBA Plan may state on the cover sheet that it is the "SSOBA Defined Contribution Retirement Plan", the organizational Trust Agreement refers to it as the "Special and Superior Officers Benevolent Association Defined Contribution Retirement Fund".  This issue of semantics is a red herring lacking in any merit.  In the Court's view, the only reasonable interpretation of the MOA is that it is an agreement with respect to contributions into the SSOBA Fund.

Furthermore, the Defendant relies in large part on the purported illegality of the SSOBA Fund and the alleged failure to comply with the relevant tax code to support its contention that it would not have agreed to contribute to the SSOBA Fund.  However, where the language of the agreement is unambiguous on its face, the Court cannot look to extrinsic evidence, particularly where such evidence is offered to directly contradict the terms of the agreement. See Katel Ltd. Liab. Co. v. AT & T Corp., 607 F.3d 60, 65 (2d Cir. 2010) (affirming a grant of summary judgment where inserting a word not present in an agreement would lead to an "illogical" result).

Nevertheless, even if the Court could consider extrinsic evidence, the relevant inquiry is not whether, in hindsight, the Defendant would or could have entered into the agreement, but whether the parties intended the agreement to be an affirmative obligation without a condition precedent. The Defendant has not provided any evidence showing that it believed at the time it signed the MOA and the 2008 CBA, that the SSOBA Plan/Fund violated the LMRA and was not tax-qualified. Thus, the Defendant has not raised a genuine issue of material fact that issues surrounding the legality of the SSOBA Plan/Fund and its tax-qualified status would alter the terms of the parties' agreement.

Ultimately, the Court finds that the MOA is unambiguous and that there was no condition precedent to the Defendant's obligation to contribute to the SSOBA Fund. The plain language of the MOA states that the Defendant "agrees to contribute the sum of 5.00% of gross payroll on behalf of each [SSOBA Employee] to the [SSOBA Fund]"; that "Payments (contributions or loan payments) to the Fund shall be made when due to the [SSOBA Fund]"; and that "Rochdale Village, Inc. hereby adopts, ratifies and agrees to be subject to, and bound by all of the terms and provisions of the Agreement and Declaration of Trust of the [SSOBA Fund], together with any and all amendments thereto heretofore and/or hereafter duly approved by the Trustees of said Fund, and any and all acts and resolutions heretofore and/or hereafter approved and/or adopted by said Trustees". (MOA at 1–2 (emphasis added).) There is no limiting or qualifying language making any of these obligations contingent on any specific modifications of the SSOBA Fund. If the Defendant had objected to being "bound" by the terms of any changes to the SSOBA Fund by the Trustees, the Defendant could have inserted language to preserve that objection. Again, the long-standing rule is that "[i]f the contract is unambiguous, that is, only susceptible to one

24

reasonable interpretation, the court must give effect to the contract as written." Madeleine
L.L.C. v. Street, 757 F. Supp. 2d 403, 405 (S.D.N.Y. 2010) (internal quotation marks omitted).

Moreover, when the parties entered into the 2008 CBA on October 29, 2008, they
unambiguously agreed to incorporate the MOA in its entirety and without any changes. To
support its contention that the MOA imposes a conditional obligation to contribute to the
SSOBA Fund, the Defendant points to an obligation under the MOA for the parties "to prepare
and execute those documents necessary to effect a transfer of assets" held on behalf of SSOBA
employees by the Rochdale Plan to the SSOBA Plan/Fund, as evidence of a condition precedent.
However, this paragraph cannot be read to impose a condition precedent on the Defendant's
contribution obligation because it clearly refers to a separate and distinct obligation.

"In interpreting a contract under New York law, words and phrases . . . should be given
their plain meaning, and the contract should be construed so as to give full meaning and effect to
all of its provisions." LaSalle Bank Natl'l Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 206
(2d Cir. 2005) (citation and internal quotation marks omitted). "'[A]n interpretation of a contract
that has the effect of rendering at least one clause superfluous or meaningless . . . is not
preferred and will be avoided if possible.'" Id. (quoting Shaw Group, Inc. v. Triplefine Int'l
Corp., 322 F.3d 115, 121 (2d Cir. 2003)). Reading the language in a separate clause that the
parties must "prepare and execute" certain documents before a transfer of assets to take place,
cannot alter the language that the Defendant "agrees to contribute the sum of 5.00% gross
payroll" for each SSOBA employee to the SSOBA Fund. Indeed, interpreting the obligation to
contribute new funds in light of the secondary obligation to prepare and execute documents to
transfer preexisting funds would render meaningless the phrase "agrees to contribute". The
Second Circuit has cautioned that, in determining whether a contract is ambiguous a "court

25

should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." Federal Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557,568 (2d Cir. 2011) (quoting Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)).

The MOA contains a number of distinct and separate agreements between the parties. One of those, which is the subject of this action, is the Defendant's agreement to contribute to the SSOBA Fund. Another, which is the subject of the Union Action, is to prepare and execute documents to effectuate a transfer of assets from the Rochdale Plan to the SSOBA Fund. The Defendant's post-contractual attempt to conflate the separate obligations to read a condition precedent into the MOA does not alter its plain language. Whether and to what extent the Defendant had an obligation under this secondary promise regarding the transfer of the assets from the Rochdale Plan is the subject of the Union Action, and the Court takes no position on whether that aspect of the MOA is ambiguous.

Under New York law "[a] court may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used to make a new contract for the parties." Riverside South Planning Corp. v. CRP/Extell Riverside, L.P., 60 A.D.3d 61,66, 869 N.Y.S.2d 511, 516 (1st Dep't 2008). It is well-settled that "a contractual duty is not to be construed as a condition precedent unless the language of the contract clearly imposes such a condition." Kidder Peabody & Co., Inc. v. Unigestion Int'l, Ltd., 903 F. Supp. 479, 501 (S.D.N.Y.1995). Although the Defendant argues that the parties agreed to execute an indemnification agreement and to amend the Plan Documents and the MOA prior to its contribution obligation becoming binding, there is absolutely no reference to any of these "agreements" in the plain language of the signed and executed documents.

26

To conclude, absent from the 2005 CBA, relevant side letters, MOA, and 2008 CBA are any terms or phrases even suggesting the possibility of a condition precedent to the Defendant's contribution obligations, let alone language "clearly imposing" such a condition.  Thus, the Court finds that the 2008 CBA and MOA impose a clear and unequivocal obligation on the Defendant to contribute to the SSOBA Fund for the 2008, 2009, and 2010 calendar years.   Accordingly, the Court grants the Plaintiffs' motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiffs' motion for summary judgment to recover unpaid fringe benefit contributions required to be paid by the Defendant is granted in its entirety, and it is further

**ORDERED**, that the Defendant's motion for summary judgment dismissing the Plaintiffs' complaint is denied in its entirety, and it is further

**ORDERED**, that the Court respectfully refers this matter to United States Magistrate Judge Arlene R. Lindsay for an inquest as to damages, including reasonable attorneys' fees and costs.

**SO ORDERED.**

Dated: Central Islip, New York
March 30, 2012

       _/s/ Arthur D. Spatt_____
        ARTHUR D. SPATT
        United States District Judge